CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
04/26/2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD ALAN WELLBELOVED-STONE,<br><br>*Defendant.* | CASE NO. 3:17-CR-00014<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This case is before the Court on Defendant's motion to dismiss and two motions to suppress. (Dkts. 31, 32, 35, 36). Defendant was indicted on three counts of violating 18 U.S.C. §§ 2251(a), (e) (possession of child pornography), and one count of violating 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) (production of child pornography). Defendant moves to dismiss the counts as running afoul of the Commerce Clause, U.S. CONST. Art. I, § 8, cl. 3, arguing *Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519 (2012), changed the Supreme Court's Commerce Clause jurisprudence and reopened the question of whether these statutes are constitutional. Defendant also moves to suppress evidence obtained pursuant to two 19 U.S.C. § 1509 summonses and a Virginia state search warrant. The motions to suppress are currently under seal, and so the Court will use general language where appropriate to maintain confidentiality. Because I find the motions to be without merit, I will deny them.

## I. Motion to Dismiss

In his motion to dismiss, Defendant lodges an as-applied challenge to 18 U.S.C. §§ 2251(a), (e) and 2252(a)(4)(B), (b)(2). (Dkt. 32). He contends that both statutes, § 2251 and § 2252, violate the Commerce Clause because they subject "individuals to federal police powers based exclusively on a lack of economic or commercial interest activity." *Id*. at ECF 3. He claims his conduct lacks a nexus to interstate commerce. *Id.* at ECF 4. The Fourth Circuit

rejected identical arguments before *NFIB*. *See United States v. Buculei*, 262 F.3d 322, 329 (4th Cir. 2001) (upholding § 2251 under the Commerce Clause); *United States v. Malloy*, 568 F.3d 166, 169, 179–80 (4th Cir. 2009) (same); *United States v. White*, 2 F. App'x 295, 297 (4th Cir. 2001) (upholding § 2252 under the Commerce Clause). *NFIB* did not reopen questions about the validity of these challenges and so these arguments still fail.

In *NFIB*, Chief Justice Roberts stated that the individual mandate in the Affordable Care Act "could not be sustained under a clause authorizing Congress to 'regulate Commerce.'" *Id.* at 558.[1] He reasoned that the individual mandate did not regulate existing commercial activity, but rather compelled individuals to engage in commercial activity under the guise that doing so affected interstate commerce. *Id.* at 552. Defendant incorrectly equates the statutes' proscription of his alleged conduct (production and possession of child pornography) with the Affordable Care Act's regulation of the inactivity at issue in *NFIB*. 567 U.S. at 558. While five members of the Supreme Court concluded the latter exceeded Congress's power under the Commerce Clause, the former does not. This result is mandated by the Fourth Circuit's pre-*NFIB* cases addressing Congress's authority to regulate this conduct.

Those cases asked whether the regulated conduct underlying the as-applied challenged had "substantially affect[ed] interstate commerce." *Buculei*, 262 F.3d at 328 (quoting *United States v. Lopez*, 514 U.S. 549, 558–59 (1995)). Analysis of this question must begin with a presumption of constitutionality. "Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain

---

[1] The main discussion of the Commerce Clause in *NFIB* comes solely from Chief Justice Robert's opinion. "Five members of the Court, however, concluded that the individual mandate exceeds Congress's power under the Commerce Clause. *NFIB*, 567 U.S. at 2593 (Roberts, C.J.); *id.* at 2644–50 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) ("joint dissent")." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013) (analyzing a Commerce Clause issue under Chief Justice Robert's opinion taken together with the "joint dissenters").

showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000) (citing *United States v. Lopez,* 514 U.S. 549, 568, 577–578 (Kennedy, J., concurring)). A court conducting this inquiry need only find a "rational basis for concluding that an activity substantially affects interstate commerce." *United States v. Gibert*, 677 F.3d 613, 624 (4th Cir. 2012) (citing *United States v. Buculei*, 262 F.3d 322, 329 (4th Cir. 2001)); *see also Montgomery Cty., Md. v. Fed. Nat. Mortg. Ass'n*, 740 F.3d 914, 921 (4th Cir. 2014). The Supreme Court has enumerated four factors for lower courts to consider in analyzing whether an activity substantially affects interstate commerce:

> (1) whether the statute relates to an activity that has something to do with "'commerce' or any sort of economic enterprise, however broadly one might define those terms";
>
> (2) whether the statute contains an "express jurisdictional element which might limit its reach" to activities having "an explicit connection with or effect on interstate commerce";
>
> (3) whether congressional findings in the statute or its legislative history support the judgment that the activity in question has a "substantial effect on interstate commerce"; and
>
> (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated.

*Gibert*, 677 F.3d at 624 (summarizing factors laid out in *United States v. Morrison*, 529 U.S. 598, 610–13 (2000)): *see also United States v. Umana*, 750 F.3d 320, 337 (4th Cir. 2014). Like the Fourth Circuit's pre-*NFIB* cases addressing the constitutionality of these statutes, I will address each of these factors in turn.

**A.     The Statutes Relate to "Commerce"**

First, as to whether the statute relates to "commerce" or any sort of economic enterprise, the Fourth Circuit has held "visual depictions of minors engaging in sexually explicit conduct, *i.e.*, child pornography, is economic in nature." *Buculei*, 262 F.3d at 329 (citing *United States v.*

*Kallestad,* 236 F.3d 225, 228 (5th Cir. 2000)). The production of an item for personal consumption (in this case child pornography) that is frequently traded in interstate commerce is economic in nature. *Id.* (citing *Wickard v. Filburn*, 317 U.S. 111 (1942)). Further, the Fourth Circuit recently noted courts have "uniformly stated that the intrastate receipt, production, and possession of child pornography have a substantial effect on the interstate movement of child pornography." *United States v. Miltier*, 882 F.3d 81, at *12 (4th Cir. 2018) (citing *United States v. Paige*, 604 F.3d 1268, 1270–71 (11th Cir. 2010); *United States v. Malloy*, 568 F.3d 166, 169, 179–80 (4th Cir. 2009); *United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005)).

Overall, Defendant's alleged self-produced child pornography, together with his subsequent possession of it, is enough to substantially affect interstate market for such illicit depictions. *Wickard v. Filburn*, 317 U.S. 111 (1942); *see also New York v. Ferber*, 458 U.S. 747, 761 (1982) ("The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation."). This type of conduct is not mere inactivity, and Congress did not enact the statutes at issue to criminalize a lack of action or compel action, distinguishing this case from *NFIB*. Rather, Congress successfully undertook to punish affirmative acts (production and possession) related to child pornography that possess a nexus to interstate commerce.

Therefore, the first factor supports the constitutionality of both statutes.

**B.     The Statutes Contain Jurisdictional Elements**

Second, as to whether the statute contains a jurisdictional element to limit its reach to activities with an explicit connection to interstate commerce, I find such an express jurisdictional element is present in the plain language of both statutes.

Title 18, U.S.C. § 2251(a) states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . , shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction *will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or . . . transported in or affecting interstate or foreign commerce by any means, including by computer. . . .*

18 U.S.C. § 2251(a) (emphasis added). Likewise, under 18 U.S.C. §§ 2252(a)(4)(B):

> Any person who--knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction *that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer*, if--(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B) (emphasis added).

In each of the statutes, the jurisdictional element modifies discrete sets of proscribed activities (in § 2251, the production of child pornography to be transported in interstate commerce, and in § 2252 knowing possession of child pornography which was produced using materials shipped in interstate commerce). This is not, as Defendant suggests, a mere "pretextual incantation evoking the phantasm of commerce." (Dkt. 32 at ECF 8 (citing *United States v. Maxwell*, 446 F.3d 1210, 1218 (11th Cir. 2006)). The *Maxwell* case on which Defendant relies in fact stated: "Our understanding of *Raich,* however, leads us to the conclusion that it is within Congress's authority to regulate *all* intrastate possession of child pornography, not just that which has traveled in interstate commerce or has been produced using materials that have traveled in interstate commerce." *Maxwell*, 446 F.3d at 1218 (emphasis in original). Here, the statute has a jurisdictional limitation restricting its application to conduct with some nexus to interstate commerce.

C.  **Congressional Findings Reinforce that the Statutes Have a Substantial Effect on Interstate Commerce**

Third, as to whether congressional findings support that the statutes have a substantial effect on interstate commerce, the Fourth Circuit recently recognized that "Congress has made specific findings that the intrastate regulation of child pornography sufficiently affects the interstate child pornography market." *United States v. Miltier*, 882 F.3d 81, 89 (citing Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(F), 120 Stat. 587, 624 (codified as amended at 18 U.S.C. § 2251); Child Pornography Prevention Act of 1996, Pub. L. 104-208, § 121(12), 110 Stat. 3009-26, 3009-27 (codified as amended at 18 U.S.C. § 2251)). The third factor hence supports the constitutionality of both statutes.

D.  **The Link Between the Activity and Interstate Commerce is not Attenuated**

Fourth and lastly, as to whether the link between the proscribed activity and the substantial effect on interstate commerce is attenuated, the Fourth Circuit has recognized that "there is no question that the link between the activity in question [proscribed under § 2251] and interstate commerce is not in any way attenuated." *Buculei*, 262 F.3d at 329–30.

Defendant's contention that *NFIB* changes this previously recognized link is unpersuasive. First, Defendant's argument fails to recognize that his offenses originated from devices that were purchased in interstate commerce (*i.e.,* a phone and a computer). Second, the statutes themselves are limited to conduct possessing some nexus with interstate commerce. Third, the Court has already noted above that the possession and production of child pornography itself has a substantial effect on interstate commerce. These three facts taken together demonstrate a strong link between the alleged criminal conduct at issue and its substantial effect on interstate commerce.

\*   \*   \*

Overall, each factor weighs in favor of finding the statutes constitutional as applied to Defendant. Ultimately, Defendant's arguments rely too heavily on *NFIB*, a case that does not address the constitutionality of Congress's regulation of the type of conduct at issue here. The Court's discussion in *NFIB* does not threaten the foundation of precedent finding the statutes at issue constitutional. *See Buculei*, 262 F.3d at 329; *White*, 2 F. App'x at 297. Every other circuit to consider the question agrees. *See, e.g., United States v. Rose,* 714 F.3d 362, 371 (6th Cir. 2013) (rejecting *NFIB* challenge to circuit precedent on interstate commerce element of 18 U.S.C. § 2251), *cert. denied,* 134 S.Ct. 272 (2013); *United States v. Sullivan*, 797 F.3d 623, 632 (9th Cir. 2015) (holding circuit precedent on the interstate commerce requirements of 18 U.S.C. §§ 2251 and 2252 remains binding after *NFIB*); *United States v. Parton,* 749 F.3d 1329, 1331 (11th Cir. 2014) (rejecting *NFIB* challenge to 18 U.S.C. § 2251(a)); *United States v. Humphrey*, 845 F.3d 1320 (10th Cir. 2017) (deciding § 2251 applied to purely intrastate production of child pornography does not violate Commerce Clause). I find 18 U.S.C. § 2251 and 18 U.S.C. § 2252, as applied to Defendant, do not violate the Commerce Clause.

## II. Motions to Suppress

### A.  Motion to Suppress the 19 U.S.C. § 1509 Summonses

Defendant first moves to suppress evidence obtained under two summonses issued pursuant to 19 U.S.C. § 1509. The Government, through an overseas operative for Homeland Security Investigations (HSI), utilized § 1509 summonses to obtain Defendant's personal information (*e.g.*, IP addresses, meta-data, *etc.*) from an internet service provider and an online instant messaging platform, which in turn was used to identify him in connection with alleged child exploitation offenses. Defendant argues HSI is not endowed with the power to serve

summons related to non-customs related offenses under 19 U.S.C. § 1509. He reasons the Court should then suppress all evidence deriving from the statutorily and constitutionally deficient summonses. Defendant also contends no good-faith exception exists for such a violation.

"A statutory violation by itself, without an underlying constitutional violation, is insufficient to justify the exclusion of evidence obtained in violation of the statute in question, unless the defendant shows that Congress provided such a remedy for a violation of the statute." *United States v. Cray*, 450 F. App'x 923, 929 (11th Cir. 2012); *see also United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011). Assuming there was a statutory violation present in the instant case, there still was no violation of Defendant's constitutional rights, and there is no exclusionary remedy found in the statute. As a result, the motion to suppress the § 1509 summonses fails.

**1.     The Search Pursuant to the § 1509 Summonses did not Violate the Fourth Amendment**

Summonses under 19 U.S.C. § 1509 can be, and have been, properly used to investigate child pornography offenses. *Cray*, 450 F. App'x at 926 (stating that the Government's case, using a § 1509 summons, was "put together by agents of [DHS], [ICE], the FBI, and the Georgia Bureau of Investigation" in charging the defendant with child pornography offenses); *United States v. Merrell*, 88 F. Supp. 3d 1017, 1033 (D. Minn. 2015), *aff'd,* 842 F.3d 577 (8th Cir. 2016) (finding that there was "nothing improper" about an agent from DHS, tasked with investigating child exploitation violations, issuing a § 1509 summons); *United States v. McLean*, No. SA-09-CR-270, 2010 WL 376381, at *3 (W.D. Tex. Jan. 25, 2010), *aff'd,* 419 F. App'x 473 (5th Cir. 2011) ("The United States Customs Service is charged with insuring compliance with child exploitation laws," including child pornography offenses); *see also United States v. Fletcher*, 763 F.3d 711, 713 (7th Cir. 2014) ("Immigration and Customs Enforcement ('ICE') Special Agents [] are experts in investigating child exploitation offenses."). Defendant's argument that

the instant offenses are somehow outside the purview of 19 U.S.C. § 1509 and the role of HSI is without merit.[2]

In order to challenge an administrative summons under the Fourth Amendment, the defendant must have a subjective expectation of privacy in the information sought, and that subjective expectation must be reasonable. *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010); *see also United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997) (citing *Katz,* 389 U.S. 347 (1967)). Courts have consistently found there is no expectation of privacy in a subscriber's personal information provided to his internet service provider, phone company, or voluntarily to a third party. In fact, "[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation." *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) (collecting cases) (holding that there was no expectation of privacy for defendant's Yahoo! and Cox subscriber information seized in the course of investigating child pornography offenses); *see also United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("We conclude that plaintiffs in these cases lack a Fourth Amendment privacy interest in their subscriber information because they communicated it to the systems operators."). Moreover, the Fourth Circuit has held that a defendant does not have an objectively reasonable expectation of privacy in his internet and phone subscriber information, when such information was voluntarily conveyed to the internet and phone companies. *Bynum*, 604 F.3d at 164. The Fourth Circuit recognized that such "administrative subpoenas [do] not invade any legitimate privacy interest possessed by [the defendant] . . ." and therefore do not violate the Fourth Amendment. *Id.* at 164.

---

[2] Defendant's reference to an internal policy memorandum for the Customs and Border Protection (CBP) division of DHS does not control our analysis here. (Dkt. 36 at ECF 15). As the Government points out, CBP and HSI are distinct departments under the larger umbrella of DHS. (Dkt. 39 at ECF 11; Dkt. 36 at ECF 2 (noting in Defendant's brief in support that CBP is "another division of DHS"). Accordingly, this manual does not bind HSI.

Defendant's argument that the legal landscape *could* change in light of the Supreme Court's looming decision in *Carpenter v. United States*, No. 16-402, is rather beside the point, and I refuse to speculate on how that case will be decided or its hypothetical application here. While the digital age has and will continue to prompt changes in the law, Defendant cites no binding precedent that compels finding that the summons violated current Fourth Amendment doctrine.[3]

## 2. An Exclusionary Remedy is Unavailable under § 1509

Although the Government's search did not violate the Fourth Amendment, the evidence may nonetheless be excluded if there is a violation of the statute, and the statute itself provides an exclusionary remedy. "In the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text." *Clenney*, 631 F.3d at 667 (citing *States v. Donovan*, 429 U.S. 413, 432 n. 22 (1977)). What is more, "there is no exclusionary rule generally applicable to statutory violations." *Id.* Exclusion of evidence for a statutory violation is only appropriate "where [1] the statute specifically provides for suppression as a remedy or [2] the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure." *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349 (2006). Because I find the statute at issue here, 19 U.S.C. § 1509, does not contain an exclusionary remedy, nor does it implicate Defendant's Fourth Amendment rights, Defendant's motion to suppress the summonses will be denied.

---

[3] Defendant's attempt to extend the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012) is unconvincing. In *Jones*, the Court found that attaching a GPS device to a car was a search under the Fourth Amendment. *Id.* at 404. In its simplest terms, *Jones* was about: "The Government physically occup[ying] private property for the purpose of obtaining information." *Id.* Here, no such physical occupation transpired. Indeed, the summonses sought to obtain only digital information that was voluntarily provided by Defendant to third parties—nothing more, nothing less.

First, assuming that there was a violation of the statute, 19 U.S.C. § 1509 does not provide for an exclusionary remedy. *United States v. Reed*, No. CR. 08-40010, 2008 WL 11350272, at *3 (D.S.D. Nov. 17, 2008), *report and recommendation adopted,* No. CR 08-40010, 2009 WL 10678958 (D.S.D. May 7, 2009) (analogizing from the ECPA to find that there was no exclusionary remedy in 19 U.S.C. § 1509). An exclusionary remedy is simply nowhere to be found in the statutory text. Further, the alleged violation of the statute cannot be remedied by the judicially fashioned exclusionary rule. *United States v. Donovan,* 429 U.S. 413, 432 n. 22 (1977) ("[T]he suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights."); *Clenney*, 631 F.3d at 667 (holding there is no generally applicable exclusionary rule to statutory violations). The Supreme Court and the Fourth Circuit have left it to the legislature to articulate remedies for statutory violations, so this Court will not create a remedy Congress has declined to provide.

Second, the alleged statutory violation does not implicate any constitutional rights, specifically Defendant's Fourth Amendment rights. As demonstrated above, Defendant has no expectation of privacy in the personal information obtained by the Government via the 19 U.S.C. § 1509 summonses. *See* Part II.A.1. *Perrine*, 518 F.3d at 1204 (collecting cases) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.").

In sum, there is no statutory exclusionary remedy for 19 U.S.C. § 1509, and Defendant's Fourth Amendment rights are not implicated.

## B. Motion to Suppress the State Search Warrant

Defendant also moves to suppress evidence of his child pornography offenses obtained under a search warrant issued pursuant to Virginia Code § 19.2-54. The Charlottesville Police Department (CPD) executed a search warrant based upon online discussions Defendant had with an undercover operative working with HSI. Defendant exchanged messages with the undercover operative regarding his alleged interest and previous physical interactions with minor children. Defendant also made reference to an upcoming opportunity to be with a minor he was grooming. Using the personal information obtained by the § 1509 summonses, the CPD was able to locate Defendant and surveilled his home. A CPD detective located Defendant's wife's Facebook page, which showed Defendant and his wife with two children, one of which matched the description of a minor discussed by Defendant with the undercover operative. Based on these facts, a CPD detective applied for, and obtained, a search warrant to investigate two sex offenses under Virginia law. The state then turned the evidence uncovered by this search over to the federal government.

Defendant alleges that the warrant was defective for three reasons: (1) the application supporting the warrant was uncorroborated and lacked sufficient probable cause; (2) the application lacked any reasonable belief that evidence of the alleged sex offenses under Virginia law would be found at Defendant's residence or on his electronic devices; and (3) the application lacked a sufficient factual basis for the state court judge to determine the existence of probable cause. Lastly, Defendant requests a *Franks* hearing, claiming that factual information was omitted from the affidavit supporting the search warrant. Assuming without deciding that probable cause was absent, I find the good-faith exception applies to the search warrant, so

Defendant's motion to suppress will be denied. Further, because Defendant has failed to make the required substantial preliminary showing, I will deny his request for a *Franks* hearing.

1. **The *Leon* "Good-Faith" Exception to the Warrant Requirement Applies**

When a Defendant challenges both probable cause for the warrant and the application of the good-faith exception, the Court may proceed directly to the good-faith issue. *United States v. Legg*, 18 F.3d 240, 243–44 (4th Cir. 1994). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). There are four categories of conduct in which an officer cannot be said to have acted with "objective reasonableness," precluding use of the good-faith exception under *Leon*:

> (1) When "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."
>
> (2) When the issuing magistrate wholly abandoned his judicial role as a neutral and detached judicial officer.
>
> (3) When the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render an official's belief in its existence entirely unreasonable."
>
> (4) When a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Leon*, 468 U.S. 897, 923 (1984). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination," although that deference is not blind or limitless. *Leon*, 468 U.S. at 914. The good-faith exception under *Leon* is inapplicable, and exclusion of

evidence is proper, when a warrant application was so devoid of necessary information that it is objectively unreasonable. *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011).

Here, Defendant specifically argues the third exclusion under *Leon*, that the Court is precluded from using the good-faith exception because "the affidavit for the warrant was so 'bare bones' and 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" (Dkt. 35 at ECF 22) (citing *Leon*, 468 U.S. at 923 (citations omitted)). Defendant argues this case is analogous to the Fourth Circuit's decision in *Doyle*, and that this Court should find the good-faith exception inapplicable.

In *Doyle*, the Government executed a search warrant on a defendant and found child pornography on his hard drive. 650 F.3d at 464. He moved to suppress the evidence, claiming that "any information support a finding of probable cause was too 'stale' to justify reliance thereon." *Id.* The search warrant was for evidence connected to a state offense for possession of child pornography. *Id.* The affidavit stated that several minor children had claimed the defendant sexually assaulted them at his house. *Id.* One child also mentioned that the defendant had shown the victim child pornography. *Id.* In addition, the warrant was issued, in part, based on an officer's "unsworn 'summary' of his investigation to the issuing magistrate . . . ." *Id.*

The Fourth Circuit found the good-faith exception did not apply because the affidavit in support of the warrant "lacked the necessary information from which the issuing magistrate, or executing police officer, could glean probable cause to support a search for child pornography," rendering the warrant objectively unreasonable. *Id.* at 470. Although there was a nexus between the alleged child pornography offenses and the defendant's house, there was "scant evidence in the affidavit (or [the officer's] investigation summary) to support a belief that [the defendant] in fact possessed child pornography." *Id.* at 472. Further, the Court relied upon the fact that "where

the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place." *Id.* at 475.

None of the ills that plagued the warrant in *Doyle* are present here. Unlike the affidavit in *Doyle*, the instant affidavit provided specific dates and specific statements from Defendant himself regarding the grooming and molesting of a minor child. Indeed, the affidavit setting forth the "material facts constituting probable cause that a search be made" was 15 pages long. The affidavit included correspondence from the Defendant admitting to the offenses listed on the warrant, identifying the Defendant, and providing the information used to locate Defendant. Further, and particularly relevant here, the affidavit contains a section specifically addressing the use of computers and the internet for child exploitation offenses. This sufficiently justifies the seizure of Defendant's devices and computer. Additionally, the instant warrant sought evidence of "hands-on sexual abuse," not merely child pornography, as was the case in *Doyle*. (Dkt. 41 at ECF 13). This was not a search for child pornography based on loose or vague allegations of possession; this was a search for evidence pertaining to direct sexual abuse that Defendant himself had admitted to. These facts weigh heavily in favor of finding the good-faith exception applicable. This warrant was nowhere near the standard of "so lacking in indicia of probable cause" that no reasonable officer could rely on it.

Nonetheless, Defendant attacks the affidavit underpinning the warrant. First, he argues that the warrant lacked a "sufficient, substantial factual basis from which the issuing Judge could determine any nexus to the defendant's residence." However, the Fourth Circuit has held "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of *where one would likely keep such evidence*." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (emphasis added).

Here, Defendant used his computer and electronic devices to discuss with others his prohibited sexual conduct. Evidence of this fact was provided in support of the search warrant. It is entirely reasonable and normal to infer that his computer and his devices would be located at his home—the place searched. *United States v. Peterson*, 294 F. Supp. 2d 797, 806 (D.S.C. 2003), *aff'd,* 145 F. App'x 820 (4th Cir. 2005) (noting the "common sense argument that computers are usually stored in the home, provid[ing] a sufficient nexus between defendant's residence and the evidence observed on the computer."); *see also United States v. Kapordelis*, 569 F.3d 1291, 1312 (11th Cir. 2009) ("Using common sense in evaluating the facts, the necessary 'nexus' existed between the facts surrounding Defendant's travel to Russia, the facts which suggested that he met and engaged in sexual activity with young boys and the assertion that evidence of sex tourism and child pornography would be found in Defendant's home.").

Second, Defendant quotes *Doyle* and argues probable cause is lacking because "evidence of child molestation alone does not support probable cause to search for child pornography." *Doyle*, 650 F.3d at 472. As discussed above, the instant search warrant was not issued to find child pornography—it was issued to seize evidence of Defendant's alleged sex crimes with minor children. Since the initial investigation was for state child sex offenses, Defendant cannot redirect the probable cause inquiry to a crime not implicated on the face of the warrant.

Third, Defendant at several points contends there was no corroboration of the affidavit, further undermining probable cause and making any reliance on the warrant unreasonable. In support, Defendant's posits (without citation) that "a statement made online between two individuals using fake names should be likened to an anonymous tip." (Dkt. 35 at ECF 10). Defendant argues that "information from an unnamed informant, [that] provided no indication of

that informant's truthfulness or reliability," does "not adequately support [a] magistrate's finding of probable cause." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996).

The tipster corroboration cases carry no weight when the "tip" comes from the defendant himself. Defendant was specifically identified by his IP address, and other relevant information, pursuant to validly executed administrative summonses. *See* Part II.A. These summons traced the relevant comments not to an anonymous third party tipster, but back to Defendant himself. This personal identification information obtained through the summonses, which identifies Defendant based off of the online conversations, corroborates that he was the one making these statements. Accordingly, this is nothing like a statement made by an anonymous tipster. Rather, the summonses provided the Government with confirmation of precise details regarding who Defendant was, where he lived, and what information he shared online and when. Defendant's identity was further corroborated by the CPD, who investigated Defendant's home from the outside, researched the cars in Defendant's driveway to confirm he lived there, and even observed his access to minor children via his wife's Facebook page. The information provided in support of the search warrant falls well short of the uncorroborated affidavit the Fourth Circuit found to be insufficient in *Wilhelm*. When seeking to establish probable cause to support a warrant, the Government is not required to disbelieve an investigative target's own statements about his own previous criminal acts and his ongoing efforts groom additional victims.[4]

---

[4] Relatedly, Defendant argues that there was not sufficient evidence to distinguish whether what he said was "anything more than fantasy." On this point, Defendant produces studies regarding self-misrepresentation online and cites to First Amendment law regarding the prohibition on "thought crime." (Dkt. 35 at ECF 11 (quoting *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("[T]he Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct."))). However, Defendant's arguments collapse under the weight of his own online admission, wherein he describes with particularity acts of molestation that he has already committed, and insinuates his intention to commit further prohibited acts. Defendant discussed deeds and conduct—not words or ideas. Moreover, Defendant's argument goes to the merits of his charges and not the sufficiency of probable cause.

For all of these reasons, I find that the good-faith exception applies, and Defendant's motion to suppress the search warrant will be denied.

**2. Defendant has Failed to Make the "Substantial Preliminary Showing" to Justify a *Franks* Hearing**

Lastly, Defendant requests a *Franks* hearing due to what he believes was intentionally omitted relevant information in the affidavit supporting the search warrant. Under *Franks v. Delaware*, 438 U.S. 154 (1978), "where the defendant makes a *substantial preliminary showing* that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56 (emphasis added). Under the "intentionality" prong, the defendant must show by a preponderance of the evidence that the Government "omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading." *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016). "Understandably, the defendant's burden in showing intent is greater in the case of an omission because '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).

Defendant argues that had the Government not omitted one line from Defendant's instant messaging conversation contained in the affidavit, it would have "led to a finding of no probable cause to search [Defendant's] electronic devices for 'communications relating to the exploitation of children.'" (Dkt. 35 at ECF 24). Specifically, the affiant stated that it was reasonable to search

---

*Piazza v. Mayne*, 23 F. Supp. 2d 658, 662 (E.D. La. 1998), *aff'd*, 217 F.3d 239 (5th Cir. 2000) (collecting cases) ("[A]ffirmative defenses do not bear on the probable cause analysis."). Accordingly, Defendant's argument on this point fails.

Defendant's electronic devices for evidence of child exploitation offenses based on Defendant's statement that he had never "really" chatted about molesting a minor child before—except on another online platform. In contrast, Defendant vaguely stated elsewhere in his communications with the undercover informant that he had not shared this information with anyone else. Defendant argues that had this statement not been omitted, there would have been no probable cause to search Defendant's electronic devices.

This argument, however, misses the forest for the trees. First, as to intent, the Government did not represent to the magistrate that it was including *all* communications—but only *some* of the communications—between Defendant and the undercover informant. As noted above, there is no requirement that the Government provide every piece of information gathered. Second, even if this omission was done with the intent to mislead (a conclusion for which there is no basis), its inclusion in the affidavit would not have defeated probable cause. Notably, Defendant stated elsewhere in his online conversation with the undercover informant that he had used other online platforms to discuss criminal conduct, in addition to his general statements regarding how he obtained child pornography in the past online. This simple fact is sufficient to support probable cause that his electronic devices would contain evidence of the alleged crimes. In sum, Defendant has failed to make out any showing, much less a "substantial" one, that the statement was intentionally omitted to mislead and that it was necessary to find probable cause. *Franks*, 438 U.S. at 155.

### III. Conclusion

The motion to dismiss will be denied because the Supreme Court's decision in *NFIB* does not so alter the legal landscape as to render 18 U.S.C. §§ 2251, 2252 unconstitutional as applied to Defendant. Both motions to suppress will be denied. Because there was no constitutional

violation, and no exclusionary remedy is contained in the statute, the § 1509 summonses and their respective fruit will not be excluded. Additionally, the state search warrant is protected by the good-faith exception and did not violate Defendant's Fourth Amendment rights. Lastly, one stray statement that was omitted from the affidavit supporting the search warrant does not require a *Franks* hearing.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 26th day of April, 2018.

_Norman K. Moon_
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE